IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| PARENTS DEFENDING EDUCATION, *Plaintiff*, v. LINN-MAR COMMUNITY SCHOOL DISTRICT, *et al. Defendants*. | Case No. 22-cv-78-CJW-MAR **EXPEDITED RELIEF REQUESTED** |

# PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................................ ii

Introduction ............................................................................................................................................ 1

Argument ................................................................................................................................................ 1

    I.    PDE is likely to succeed on the merits ....................................................................................... 1

        A.    PDE likely has standing ................................................................................................. 1

            1.    PDE's members have suffered an injury in fact. ...................................................... 2

            2.    PDE has shown causation and redressability. ........................................................... 4

        B.    The Policy likely violates parents' Fourteenth Amendment rights ............................... 5

        C.    The Policy likely violates the First and Fourteenth Amendments ................................ 8

    II.    PDE satisfies the remaining preliminary injunction factors ..................................................... 10

Conclusion ............................................................................................................................................ 10

Certificate of Service ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**

*281 Care Comm. v. Arneson*,
 638 F.3d 621 (8th Cir. 2011) ............................................................................................... 3

*Armstrong v. Exceptional Child Ctr., Inc.*,
 575 U.S. 320 (2015) ............................................................................................................. 4

*Calgaro v. St. Louis Cnty.*,
 919 F.3d 1054 (8th Cir. 2019) ............................................................................................. 6

*Carpenters Indus. Council v. Zinke*,
 854 F.3d 1 (D.C. Cir. 2017) ................................................................................................. 4

*D.M. by Bao Xiong v. Minn. State High Sch. League*,
 917 F.3d 994 (8th Cir. 2019) ............................................................................................. 10

*Doe 1 v. Marshall*,
 367 F. Supp. 3d 1310 (M.D. Ala. 2019) .............................................................................. 8

*Epperson v. State of Ark.*,
 393 U.S. 97 (1968) ............................................................................................................. 10

*FEC v. Cruz*,
 142 S. Ct. 1638 (2022) ......................................................................................................... 3

*Hunt v. Wash. State Apple Advert. Comm'n*,
 432 U.S. 333 (1977) ............................................................................................................. 1

*In re Idaho Cons. League*,
 811 F.3d 502 (D.C. Cir. 2016) ............................................................................................. 3

*Jibril v. Mayorka*,
 20 F.4th 804 (D.C. Cir. 2021) ............................................................................................. 2

*Jones v. Jegley*,
 947 F.3d 1100 (8th Cir. 2020) ............................................................................................. 3

*Kanuszewski v. Mich. Dep't of HHS*,
 927 F.3d 396 (6th Cir. 2019) ............................................................................................... 7

*Liddell v. Special Admin. Bd.*,
 894 F.3d 959 (8th Cir. 2018) ............................................................................................... 1

*Mahanoy Area Sch. Dist. v. B.L. by and through Levy*,
 141 S. Ct. 2038 (2021) ......................................................................................................... 8

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) .................................................................................................. 8

*Moore v. City of E. Cleveland, Ohio*,
   431 U.S. 494 (1977) .............................................................................................................. 7

*NAACP v. Patterson*,
   357 U.S. 449 (1958) .............................................................................................................. 2

*Otto v. City of Boca Raton*,
   981 F.3d 854 (11th Cir. 2020) .............................................................................................. 10

*Parents v. Montgomery County Board of Education*,
   2022 WL 3544256 (D. Md. Aug. 18, 2022) ........................................................................... 8

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) .............................................................................................................. 9

*Red River Freethinkers v. City of Fargo*,
   679 F.3d 1015 (8th Cir. 2012) .............................................................................................. 1

*Ricard v. USD 475 Geary County, KS*,
   2022 WL 1471372 (D. Kan. May 9, 2022) ....................................................................... 6, 7

*Saxe v. State Coll. Area Sch. Dist.*,
   240 F.3d 200 (3d Cir. 2001) ................................................................................................. 8

*Schmidt v. Des Moines Public Schools*,
   655 F.3d 811 (8th Cir. 2011) ................................................................................................ 6

*Speech First v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ............................................................................................ 2, 4

*Speech First, Inc. v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ....................................................................................... 2, 4, 9

*Stephenson v. Davenport Community Sch. Dist.*,
   110 F.3d 1303 (8th Cir. 1997) ............................................................................................ 10

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...................................................................................................... 2, 3, 4

*Telescope Media Grp. v. Lucero*,
   936 F.3d 740 (8th Cir. 2019) ................................................................................................ 9

*Troxel v. Granville*,
   530 U.S. 57 (2000) ............................................................................................................ 1, 7

*Vitolo v. Guzman*,
  999 F.3d 353 (6th Cir. 2021) ............................................................................................. 4

*Wooley v. Maynard*,
  430 U.S. 705 (1977) ........................................................................................................... 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const., art. VI ..................................................................................................................... 4

**OTHER AUTHORITIES**

*Discrimination Complaint Form*, U.S. Dep't of Educ., bit.ly/3AYf4qx ......................................... 7

LR 505.6, *Education Records Access*, bit.ly/3Kt5aAt ................................................................... 6

## INTRODUCTION

Though it tries, the District cannot avoid the plain text of its own regulation. The Policy prohibits school officials from telling parents the truth about the actions the school is taking, and it authorizes school officials to make fundamental decisions about the child—including changing the child's name, pronouns, and more—without ever notifying the child's parents. It is impossible for parents to protect their liberty interests in the "care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality), if the government withholds this basic and critical information from them. The District's defenses of its speech restrictions are even weaker. The Policy compels students to use pronouns despite their fundamental beliefs, punishes speech expressing the viewpoint that biological sex is immutable, and enacts a speech code that is hopelessly vague.

School has started and the Policy is in effect. Without an injunction, the District will continue to violate the constitutional rights of parents and students. The Court should grant PDE's motion.

## ARGUMENT

**I.  PDE is likely to succeed on the merits.**

    **A.  PDE likely has standing.**

An association suing on behalf of its members has standing when "its members would otherwise have standing to sue in their own right," the "interests it seeks to protect are germane to the organization's purpose," and "neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The District challenges only the first requirement.[1] As parents, PDE's members "have standing to sue when practices and policies of a school threaten their rights and interests and those of their children." *Liddell v. Special Admin. Bd.*, 894 F.3d 959, 965-66 (8th Cir. 2018). In addition, because

---

[1] PDE meets the other *Hunt* requirements: the lawsuit furthers PDE's mission, Neily Decl. ¶¶3-4, and it does not require participation of individual members because PDE seeks only declaratory and injunctive relief, *see Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012).

standing "'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,'" PDE must show "[a]t the preliminary injunction stage … only that each element of standing is *likely* to obtain in the case at hand." *Speech First v. Fenves*, 979 F.3d 319, 329-30 (5th Cir. 2020) (emphasis added). The Court must "assume, for purposes of the standing analysis, that [PDE] will prevail on the merits of [its] claim[s]." *Jibril v. Mayorka*, 20 F.4th 804, 817 (D.C. Cir. 2021).[2]

### 1. PDE's members have suffered an injury in fact.

**Parental Rights**. The District wrongly asserts that PDE's members lack standing unless their children "utilized the [Policy]" or "requested [that] the School District take any action with respect to gender identity." Opp. 8. "A plaintiff is not required to wait for an injury to occur in order to satisfy Article III standing requirements." *Jibril*, 20 F.4th at 817. PDE's members have a cognizable injury if the "threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

Here, PDE's members want to ask the District on a regular basis whether their children have been given a Gender Support Plan or the school has taken any other actions to effectuate their child's gender transition. Parent B Decl. ¶8; Parent C Decl. ¶10. And they want to receive this information without asking for their child's "permission." *Id.* But the Policy prohibits the District from providing this information. Mem. 6-7; Hasson Decl., Ex. I at 1-3; *infra* 5-6. PDE's members also want to exercise their "fundamental right as a parent to guide their child's upbringing and to help [their] child navigate any issues that might arise regarding [their] perception of their gender identity." Parent A Decl. ¶10; Parent B Decl. ¶9; Parent C Decl. ¶11. But the Policy prohibits PDE's members from being involved

---

[2] PDE has not brought "[a]nonymous litigation." Opp. 5 n.1. The plaintiff is PDE. Parents A-G are PDE's members, "not … parties to the litigation." *NAACP v. Patterson*, 357 U.S. 449, 459 (1958); *see* Neily Decl. ¶¶6-7. PDE provided its members' declarations through pseudonyms given the sensitive subject matter, the obvious privacy concerns, and the minor children involved. *E.g.,* Parent A Decl., ¶14; Ex. I at 5 (Linn-Mar stressing that protecting student privacy "must be a top priority"). Courts regularly accept similar declarations at the preliminary-injunction stage in these types of facial challenges. *See, e.g., Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1114 (11th Cir. 2022).

in these decisions or being notified without the "permission" of their children. Mem. 5-7; *infra* 5-7. Parents A, B, and C all declared that there is a "substantial risk" that their children will receive a Gender Support Plan or other gender-specific treatment from District officials. Parent A Decl. ¶8; Parent B Decl. ¶¶5-7; Parent C Decl. ¶¶6-9. Their conclusions are based on their own understanding of their children, Parent A Decl. ¶5-8, 11; Parent B Decl. ¶¶4-7, 10; Parent C Decl. ¶¶6-9, and are further supported by substantial scientific research, Mem. 9-10 (citing exhibits). Indeed, because of these fears, Parent A already withdrew their child from the District middle school their child was slated to attend and Parent B attempted to enroll their child in a neighboring school district. Parent A Decl. ¶¶12-13; Parent B Decl. ¶13. There is "no doubt that [PDE] has done enough at [the preliminary-injunction] stage to establish" standing. *Jones v. Jegley*, 947 F.3d 1100, 1104 (8th Cir. 2020); *In re Idaho Cons. League*, 811 F.3d 502, 509 (D.C. Cir. 2016) (standing when plaintiff "reasonably fears" an injury).[3]

**First Amendment Rights**. The District incorrectly asserts that only students who "have been disciplined" under the Policy have standing. Opp. 10. "To establish injury in fact for a First Amendment challenge to a state statute, a plaintiff need not have been actually prosecuted or threatened with prosecution. . . . Self-censorship can itself constitute injury in fact." *281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). PDE's members have standing if their children have an "intention to engage in a course of conduct arguably affected with a constitutional interest," their intended future conduct is "arguably proscribed by the policy in question," and "the threat of future enforcement of the challenged policies is substantial." *Susan B. Anthony*, 573 U.S. at 161-64.

---

[3] The District wrongly asserts that Parent A lacks standing. Opp. 8 n.4. Parent A was forced to withdraw their child from their Linn-Mar middle school because of the Policy, and if the Policy is rescinded or enjoined, Parent A will enroll their child in the middle school the following year. Parent A Decl. ¶¶12-13; *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (an injury is traceable to "an unlawful enactment . . . even if the injury could be described in some sense as willingly incurred").

3

Importantly, it is "not hard to sustain standing for a pre-enforcement challenge in the highly sensitive area of public regulations governing bedrock political speech." *Fenves*, 979 F.3d at 331.

PDE satisfies all three elements. The children of PDE's members want to engage in speech that is "arguably affected with a constitutional interest," *Susan B. Anthony*, 573 U.S. at 161; *e.g.,* Parent D Decl. ¶¶6-7; Parent G Decl. ¶¶6-8. Their speech is "arguably proscribed" by the Policy. *Susan B. Anthony*, 573 U.S. at 162; *see* Mem. 7-8, 10. And there is a "substantial" threat of the District enforcing the policy, *Susan B. Anthony*, 573 U.S. at 164, because the Policy is "recently enacted" and there is "no compelling contrary evidence" that the Policy will not be enforced, *Fenves*, 979 F.3d at 335. PDE has shown a sufficient injury in fact. *See id.* at 330-38 (standing to bring pre-enforcement challenge a university policy prohibiting "hostile or offensive" speech); *Cartwright*, 32 F.4th at 1120-22 (similar).

### 2. PDE has shown causation and redressability.

As explained, the Policy causes PDE's members' injuries, and these injuries are redressable by a decision enjoining the District from enforcing the Policy. *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("Causation and redressability typically 'overlap as two sides of a causation coin.' After all, if a government action causes an injury, enjoining the action usually will redress that injury."); *e.g., Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir. 2021). The District contends that PDE's injuries are not redressable because, even if PDE prevails, the District "has a duty under [state and federal] law and other applicable School District policies to ensure students are not subjected to any unlawful discrimination." Opp. 11. But the Constitution is "the supreme Law of the Land." U.S. Const., art. VI. If the Policy violates the Constitution, that ends the matter. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). Regardless, the District is wrong about the meaning of Title IX and the Iowa Civil Rights Act. Neither statute requires schools to withhold information from a child's parents concerning gender identity or punish students for "misgendering."

4

### B. The Policy likely violates parents' Fourteenth Amendment rights.

The District does not dispute that the Policy authorizes school officials to make critically important decisions regarding a child's gender identity without ever informing the child's parents. Mem. 5-7. Nor does the District dispute that the child's parents can be excluded entirely from the decisionmaking process, even if they become aware of the school's actions. Mem. 5-7; Ex. I at 1-2 (students decide "who is a part of the meeting [to create a Gender Support Plan], including whether their parent/guardian will participate"); Ex. I at 1-2 ("Any student in seventh grade or older will have priority of their support plan over their parent/guardian.").

The District wrongly claims that the Policy does not "prohibit any employee from communicating honestly with parents" about the child's gender identity. Opp. 15. The Policy explicitly states that the District "shall not disclose information that may reveal a student's transgender status to others including but not limited to . . . parents . . . unless legally required to do so." Ex. I at 2; *see also id.* ("Disclosing this information other than as allowed by law is not permitted."). The District's insistence that the Policy does not "conceal" information from parents is even less credible. Opp. 15. The Policy states: "School staff should always check with the student first before contacting their parent/guardian. School staff should ask the student what name and pronouns they would like school officials to use in communications with their family. All students . . . should be aware that a parent/guardian has the right to review their student's education records under FERPA." Ex. I at 2. The message to students is unmistakable: "The school will conceal what we are doing from your parents, but be aware that they might find out another way."

As a backstop, the District claims that the Policy "explicitly" authorizes parents to "access School District records regarding their student's gender identity" through the Family Educational Rights and Privacy Act (FERPA). Opp. 17. Again, the Policy does not say that. The Policy says only that (1) school officials should not disclose a student's transgender status because such information

may be "personally identifiable information" under FERPA; and (2) parents generally have the "right to review their student's education records under FERPA." Ex. I at 2-3. Indeed, the Policy actually says the *opposite*: schools will withhold these records under a "counselor/student" privilege. The Policy requires "[a]ll written records related to student meetings concerning their gender identity and/or gender transition" to be kept in a "temporary file" that shall be "maintained by the school counselor" and "only be accessible to staff members that the student has authorized in advance to do so." Ex. I at 5. The Policy further states that "[c]onversations between students and school counselors are protected, confidential conversations under applicable counselor/student laws." *Id.* at 2. And District policy is that parents "may be denied access to a student's education records . . . when the district has been advised under the appropriate laws that the parents [may] not access the student's education records." LR 505.6, *Education Records Access*, bit.ly/3Kt5aAt. Moreover, formal documentation "is not required for a student to receive [gender identity related] supports at school." Ex. I at 2.

On the law, the District battles strawmen. PDE does not believe that "parents are entitled to notice of any conversation, discussion, or statements involving their child that might implicate their child's gender identity." Opp. 18. PDE does not claim that parents have the right to all "information" about their children no matter how "minor and sporadic." *Schmidt v. Des Moines Public Schools*, 655 F.3d 811, 819 (8th Cir. 2011). And PDE does not argue that parents have the right to "manage all details of their children's education or to obtain consultation with school officials on everyday matters." *Calgaro v. St. Louis Cnty.*, 919 F.3d 1054, 1059 (8th Cir. 2019).

But the Policy is no "minor" or "everyday" matter. The Policy takes issues that are "fundamental to a child's identity, personhood, and mental and emotional well-being," *Ricard v. USD 475 Geary County, KS*, 2022 WL 1471372, at *8 (D. Kan. May 9, 2022), and places them in the hands of the government. The Policy prohibits school officials from telling parents the truth about whether the school is effectuating their child's gender transition, and it authorizes school officials to effectuate

a child's gender transition without *ever* notifying the child's parents. If the government withholds this basic and critical information about the actions the school is taking, it is impossible for parents to protect their liberty interests in the "care, custody, and control of their children." *Troxel*, 530 U.S. at 65; *see also Kanuszewski v. Mich. Dep't of HHS*, 927 F.3d 396, 418 (6th Cir. 2019) ("Parents possess a fundamental right to make decisions concerning the medical care of their children."). To be sure, *Troxel* and other parental-rights cases "did not expressly consider" the facts presented here. *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 500 (1977). "But unless we close our eyes to the basic reasons why certain rights associated with the family have been accorded shelter under the Fourteenth amendment's Due Process Clause," the Court "cannot avoid applying the force and rationale of these precedents" to the facts in this case. *Id.* at 501.

The District effectively concedes that the Policy fails strict scrutiny. *Kanuszewski*, 927 F.3d at 419; *see Troxel*, 530 U.S. at 80 (Thomas, J., concurring) (applying strict scrutiny). The District has no compelling interest in "withholding or concealing [this information] from the parents of minor children." *Ricard*, 2022 WL 1471372, at *8. And while there could be a "particularized and substantiated concern that disclosure to a parent could lead to child abuse, neglect, or some other *illegal* conduct," *id.*, the Policy is not remotely tailored to address these circumstances. The Policy "directly contravene[s] the traditional presumption that a fit parent will act in the best interest of his or her child," and it "fail[s] to provide any protection for [parents'] fundamental constitutional right to make decisions concerning the rearing of [their] own [children]." *Troxel*, 530 U.S. at 69-70.[4]

Last, the relief PDE seeks wouldn't prevent the District from protecting student's rights under Title IX or Iowa state law. Nothing in any of the cited statutes requires schools to exclude parents

---

[4] *Parents v. Montgomery County Board of Education*, 2022 WL 3544256 (D. Md. Aug. 18, 2022), is distinguishable because the court examined whether parents have "a fundamental right to be promptly informed of their child's gender identity, when it differs from that usually associated with their sex assigned at birth." *Id.* at *7. The opinion also is not binding on this Court.

7

from being involved in these fundamental decisions. Indeed, parental involvement is *required* to even bring these claims. *See Discrimination Complaint Form* at 3, U.S. Dep't of Educ., bit.ly/3AYf4qx (requiring parent's signature to file discrimination complaint). Nor would providing the relief PDE seeks ever require the District to "restrict [a] student's speech or expression." Opp. 19.

## C. The Policy likely violates the First and Fourteenth Amendments.

***Compelled Speech***. The District notes that the Policy does not "require that students speak to one another, let alone refer to each other by name or pronouns." Opp. 21. But the compelled-speech doctrine is not so easily avoided. *E.g., Wooley v. Maynard*, 430 U.S. 705, 715 (1977) (State cannot require message on license plates, even though no one is required to drive). PDE's members' children regularly interact with transgender students. *E.g.,* Parent G Decl., ¶6. Using pronouns is a "'virtual necessity'" for engaging in any conversation. *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1325 (M.D. Ala. 2019) (quoting *Wooley*, 430 U.S. at 715). The Policy prohibits students "from speaking in accordance with [their] belief that sex and gender are conclusively linked," and trying not to "use any pronouns" would be "impossible to comply with." *Meriwether v. Hartop*, 992 F.3d 492, 517 (6th Cir. 2021). The District "cannot force [students] to choose between carrying a government message" and remaining silent in another student's presence at school. *Doe 1*, 367 F. Supp. 3d at 1326.

That the Policy regulates public school students is of no moment. Because "America's public schools are the nurseries of democracy," students must be free to express their opinions, even if their views are "unpopular." *Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 141 S. Ct. 2038, 2046 (2021). Although the Court has identified "specific categories of student speech that schools may regulate in certain circumstances," *id.* at 2045, the District never shows that any applies here. And courts regularly enjoin public school attempts to violate student speech rights. *See, e.g., Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 (3d Cir. 2001) (Alito, J.) (school policy prohibiting "harassment" unconstitutional).

8

***Content and Viewpoint Based Restrictions***. The Policy is not "neutral on [its] face." Opp. 23. It prohibits using "the incorrect name or pronouns to refer to a person" and speech that isn't "respect[ful]." Ex. I at 3, 6. This is a classic content- and viewpoint-based restriction. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391 (1992). Because the Policy discriminates based on viewpoint, it is "per se" unconstitutional. *Cartwright*, 32 F.4th at 1125-27 (university's policy banning "discriminatory harassment" was "both a content- and a viewpoint-based speech restriction"). The Policy also fails strict scrutiny. "[R]egulating speech because it is discriminatory or offensive is not a compelling state interest, however hurtful the speech may be." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019). And it is not narrowly tailored because it sweeps in far more speech than could possibly be restricted.

***Overbreadth***. The District wrongly claims that the Policy only prohibits speech "targeted at an individual student because of that student's gender identity." Opp. 25. The Policy punishes "misgendering," which is defined as "intentionally or accidentally us[ing] the incorrect name or pronouns to refer to a person." Ex. I at 6. The Policy thus prohibits *any* speech in which *any* person is referred to by an "incorrect name or pronoun." The Policy also prohibits speech that refuses to "respect" a student's gender identity. Ex. I at 3. Consider the statement: "I have no 'ill-will towards' you, but I 'believe[] that people are created either male or female and that a person cannot 'transition' from one sex to another.'" Parent G Decl. ¶ 6. This is protected speech, yet it unquestionably fails to show "respect" to the student's gender identity. The Policy is overbroad. *See Cartwright*, 32 F.4th at 1125 (policy against "discriminatory harassment" was unconstitutionally overbroad).

***Void for Vagueness***. The District vastly overstates the leeway it should receive as a public school. Although the District's policies "'need not be as detailed as a criminal code,'" policies that "reach[] expression sheltered by the First Amendment . . . demand[] a greater degree of specificity than in other contexts.'" *Stephenson v. Davenport Community Sch. Dist.*, 110 F.3d 1303, 1308-09 (8th Cir.

9

1997). So "while a lesser standard of scrutiny is appropriate because of the public school setting, a proportionately greater level of scrutiny is required because the regulation reaches the exercise of free speech." *Id.* Courts regularly enjoin these types of vague school policies. Mem. 18.[5]

## II. PDE satisfies the remaining preliminary injunction factors

*Irreparable injury.* The District claims there is no irreparable harm because PDE's members are not injured by the Policy, their children have not "availed themselves" of the Policy, and no student has been disciplined for his or her speech. Opp. 29. Those standing and merits arguments fail, as explained above. Nor are the harms to PDE's members "theoretical[]." Opp. 29. The school year has started and kids are back in school. PDE's members and their children are being deprived of their constitutional rights right now. The loss of these rights is a classic irreparable injury. Mem. 18-19.

*Balance of Harms and the Public Interest.* If PDE is likely to prevail on its constitutional claims, then the balance of harms and public interest weigh in favor of a preliminary injunction. Mem. 19. The District does not dispute that these factors are always served by the preservation of constitutional rights. *D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019). The District argues that the Policy is needed to "ensure all students have a safe and supportive school environment" and to "eradicat[e] discrimination and harassment." Opp. 30-31. But the District will remain free to pursue these worthy goals—as long as it complies with the Constitution. Neither the District nor the public "has any legitimate interest in enforcing an unconstitutional ordinance." *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020).

### CONCLUSION

PDE's motion for a preliminary injunction should be granted.

---

[5] Whether "Iowa law vests" the District with "broad legal authority" is irrelevant. Opp. 27-28. The District cannot violate the U.S. Constitution. Indeed, "'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.'" *Epperson v. State of Ark.*, 393 U.S. 97, 104 (1968).

Dated: September 1, 2022                    Respectfully submitted,

/s/ *Alan R. Ostergren*
Alan R. Ostergren
Law Office of Alan Ostergren
500 Locust St., Suite 199
Des Moines, IA 50309
(515) 207-0314
alan.ostergren@ostergrenlaw.com

/s/ *J. Michael Connolly*
J. Michael Connolly (*pro hac vice*)
James F. Hasson (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
james@consovoymccarthy.com

*Counsel for Plaintiff Parents Defending Education*

**CERTIFICATE OF SERVICE**

I certify that on September 1, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification to all counsel of record.

*/s/ J. Michael Connolly*