# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| PARENTS DEFENDING EDUCATION, | No. 22-CV-78 CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| LINN-MAR COMMUNITY SCHOOL DISTRICT, et al., | |
| Defendants. | |

_____

This matter is before the Court on plaintiff's Motion for Preliminary Injunction. (Doc. 3). Defendants timely resisted (Doc. 17), and plaintiff timely replied to the resistance (Doc. 21). The Court held oral argument on September 6, 2022. (Doc. 26). For the following reasons, the Court **denies** plaintiff's motion. In the interest of justice, the Court issues this order to announce its decision. An additional order with more comprehensive analysis will follow.

## I.  BACKGROUND

Plaintiff challenges enforcement of an administrative regulation related to Board Policy 504.13-R ("the Policy"). Among other things, the Policy allows students to receive Gender Support Plans from the school and prohibits students and staff from intentionally and repeatedly referring to students using non-adopted[1] names and pronouns. (*See* Doc. 1-1). Plaintiff asserts arguments on behalf of seven parents identified only as "Parents A-G" who are opposed to enforcement of the Policy for several reasons. Parents A and B's children have neurodevelopmental disorders, such as

---

[1] Adopted here meaning the names and pronouns with which the child identifies, which may differ from their legal name or the pronouns corresponding with their sex assigned at birth.

autism spectrum disorder, that create confusion when distinguishing between sexes and gender. (Docs. 3-2, at 1-2; 3-3, at 1-2). Parents A and B allege harm because their children could potentially misstate their sex, gender, or pronouns, indicating to the average listener that they are a gender different from that assigned at birth and identify as nonbinary or transgender. (Docs. 3-2, at 2-4; 3-3, at 2-3). They fear, in that scenario, that staff would create a Gender Support Plan without parental consent. (Docs. 3-2, at 2-3; 3-3, at 2-4). Parent C has similar fears that her daughter will be given a Gender Support Plan without her knowledge because of conversations with her daughter, her daughter's friend-group, and her daughter's life experiences. (Doc. 3-4, at 2-3). Parents A-C also assert harm to their fundamental right to make decisions about the care, custody, and control of their children. (Docs 3-2, at 3; 3-3, at 2-3; 3-4, at 3).

Parents D-G state that they and their children believe in only two genders, do not believe in gender dysphoria, and do not believe people assigned one sex at birth can genuinely identify later as another gender. (Docs 3-5, at 2; 3-6, at 2; 3-7, at 2; 3-8, at 2). Parents D-G allege harm through the chilling of speech because their children will be punished under the Policy if they do not "respect" another child's name or pronouns on a repeat, intentional basis, and they feel uncomfortable voicing their opinions on gender identity at school. (Docs 3-5, at 2; 3-6, at 2; 3-7, at 2; 3-8, at 2-3).

Plaintiff, a parent's organization acting on behalf of Parents A-G, seeks a preliminary injunction barring defendants from enforcing the Policy.

## II. PRELIMINARY INJUNCTION STANDARD

The requirements for a preliminary injunction are well established:

> When determining whether to issue a preliminary injunction, the district court should consider "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other party litigants; (3) the probability that movant will succeed on the merits; and (4) the public interest."

2

Case 1:22-cv-00078-CJW-MAR     Document 28     Filed 09/12/22     Page 2 of 11

*Jet Midwest Int'l Co., Ltd v. Jet Midwest Grp., LLC,* 953 F.3d 1041, 1044 (8th Cir. 2020) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The movant bears the burden of establishing the propriety of a preliminary injunction. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original) (quoting 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)). "[T]he burden on the movant is heavy, in particular where . . . 'granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.'" *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (second alteration in original) (quoting *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

### III. ANALYSIS

Applying the *Dataphase* factors here, the Court finds plaintiff has failed to carry its heavy burden.

#### A. Irreparable Harm

"[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Wachovia Secs., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1044 (N.D. Iowa 2008) (citation omitted). The movant must show more than the mere possibility that irreparable harm will occur. *TrueNorth Co., L.C. v. TruNorth Warranty Plans of North America, LLC*, 353 F. Supp. 3d 788, 801 (N.D. Iowa 2018). Rather, the movant must show it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Thus, "[s]peculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012); *see also*

3

*Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996))). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction[.]" *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

Here, plaintiff has not shown irreparable harm will occur absent a preliminary injunction. Plaintiff has only provided evidence that harm is possible. There have been no showings of discipline under the Policy, that Gender Support Plans were given to children of Parents A-C, or that any parents have been denied information. Further, there has not been a showing with sufficient specificity of chilled speech or the avoidance of a certain course of conduct caused by the Policy's limitations. Plaintiff also has not shown that it is certain or imminent that Parents A-G's children will violate the Policy and receive discipline, be given a Gender Support Plan, that protected speech will be chilled, or that they will be denied information. Indeed, to the extent that defendants disciplined children for violation of the Policy, that discipline would be subject to review and could be reversed, and thus discipline would not be irreparable. In short, the parents only assert that they fear their rights will be harmed if some uncertain future events occur. They have not shown any of these harms to be certain or imminent.

Thus, the Court finds irreparable harm does not weigh in favor of an injunction.

### B.  Balance of Harms

"[T]he balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." *Wachovia Secs., L.L.C.*, 571 F. Supp.2d at 1047. It is not the same analysis as the irreparable harm analysis. *Id.* The balance of harms analysis

considers several factors including the threat of each parties' rights that would result from granting or denying the injunction, the potential economic harm to the parties, and whether the defendant has taken voluntary remedial action. *Id.* "[A]n illusory harm to the movant will not outweigh any actual harm to the non-movant." *Frank N. Magid Assocs., Inc. v. Marrs*, No. 16-CV-198-LRR, 2017 WL 3091457, at *5 (N.D. Iowa Jan. 9, 2017) (quoting *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 976–77 (N.D. Iowa 2006)).

The Court finds the balance of harms disfavors injunction. The balance of harms only considers those harms that would result were the Court to issue an injunction. If an injunction were granted here, it would not only prevent enforcement of the provisions at issue; it would prevent enforcement of the entire Policy because plaintiff has challenged the entire administrative Policy.[2] (Doc. 3, at 1). An injunction would block students from any protection from harassment and bullying on the basis of gender identity and would prevent the school from disciplining such harassment and bullying under various Title IX and Iowa civil rights-related provisions that defendants are obligated by law to enforce. If a child were being bullied or harassed under any provision of the entire Policy, the school would not be allowed to step in and stop the bullying and would leave a vulnerable child with no remedy within the district. This child could include a child belonging to Parents B-G.[3]

In contrast, no harm would immediately befall plaintiff if an injunction were not issued. Plaintiff has not shown any harms currently befall the parents or children for

---

[2] It appeared at the hearing, however, that plaintiff was attempting to narrow its ask to an injunction only to the challenged provisions. The Court will not assume that to be the case, however, since that was not clear and the party's filings ask for injunction to the entire Policy.

[3] The Court does not mention Parent A in its analysis here, given their child is no longer enrolled in the district and will not be subjected to the Policy's provisions.

which it speaks as the Policy remains in force. However, even if the Court assumes harm to the plaintiff will occur, that harm would be insufficient to warrant an injunction. If the Court assumes Parents B-G will be deprived of information as to their children, that their children will be given or discuss a Gender Support Plan, or that their children will be punished for violating the provisions at issue, that harm is not so great as to outweigh the harm to defendants and students within the district. Six parents assert their children face potential harm without an injunction. All families and their children in the district face potential harm with an injunction, given the Policy reaches to protect all students for various reasons and not only for name and pronoun misuse.

Thus, the balance of harms weighs against granting a preliminary injunction.

### C. *Public Interest*

This Court has noted as follows:

> The "public interest" factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve [and] a preference for enjoining inequitable conduct[.]

*Prudential Ins. Co. v. Inlay*, 728 F. Supp. 2d 1022, 1032 (N.D. Iowa 2010) (internal citations omitted).

The Court finds the public interest weighs against a preliminary injunction. It is in the public interest to ensure schools comply with state law that prohibits discrimination based on gender identity. Likewise, it is in the public interest that public schools are productive, safe places to educate children and to ensure no child is subject to harassment, bullying, or made to feel lesser for any reason by students, staff, or others while at school. Although it is also in the public interest to prevent the chilling of protected speech and interference with the right of child-rearing, those alleged harms to speech and child-rearing here are, at this stage, not imminent harms.

Thus, the public interest tips in favor of denying the injunction.

### D.     *Likelihood of Success on the Merits*

The Eighth Circuit has rejected the notion that the phrase "probability of success on the merits" should be read to mean that a movant can "prove a greater than fifty [percent] likelihood that he will prevail on the merits." *Dataphase Sys., Inc.*, 640 F.2d at 113. More recently, the Eighth Circuit has explained that in cases not seeking to enjoin "government action based on presumptively reasoned democratic processes," courts should "apply the familiar 'fair chance of prevailing' test" to assess whether a movant has a likelihood of success on the merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008). The "fair chance of prevailing" test "asks only whether a movant has demonstrated a 'fair chance of prevailing' in the ultimate litigation and . . . does not require a strict probabilistic determination of the chances of a movant's success when other factors, for example irreparable harm, carry substantial weight." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1053–54 (8th Cir. 2014) (citations omitted).

Here, plaintiff faces some substantial obstacles of succeeding on the merits. First, there is an issue of standing to bring suit. Standing requires 1) an injury in fact that is concrete and particularized, actual or imminent; 2) that the injury in fact was likely caused by the defendant; and 3) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The burden to show all three elements of standing lies with the plaintiff. *Id.*, at 2208. When a plaintiff asserts third party standing to assert the rights of another, courts require that the plaintiff make two additional showings: (1) that the party asserting the right has a "close" relationship with the person

7

who possesses the right; (2) whether there is a "hindrance" to the possessor's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).[4]

Here, none of the parents assert their child has been given a Gender Support Plan without their consultation or that any child has been disciplined for any misuse—intentional and repeated or otherwise—of another child's adopted name or pronouns. Instead, they state the potential, conjectural possibility of injury via a Gender Support Plan being created and predict the school or child will not involve or inform parents of this Plan. Based on the record currently before the Court, no one has been denied this information. The parents also claim injury because their children may decide to express certain views or address another child using pronouns or names with which that child does not identify and that if their children do so, they may receive discipline under the Policy. None of these parents, however, allege their child's speech has resulted in discipline under the Policy. Parent A, additionally, has freely withdrawn their child from the school district, so the Policy no longer applies to their child. Even assuming the Policy "forced" the child to leave the district, the Policy itself still has no effect on the child and cannot cause a cognizable injury in fact.

In the absence of enforcement on a facial challenge, courts evaluate whether injury was caused through a chilling effect or through a credible threat of enforcement. Plaintiff, however, has only stated boilerplate, notional, subjective fears of chilled speech. Further, plaintiff has not shown any child's intention to produce a certain course of conduct that is certain to result in discipline under the Policy. Plaintiff also has not, with sufficient specificity, alleged what the children wish to express that is allegedly chilled by the Policy. At this stage of the litigation, there has not been a sufficient factual

---

[4] Neither party has spoken as to whether the organization has third-party standing to bring suit on behalf of Parents A-G.

recitation for the Court to conclude it is likely one of Parents A-G's children will be injured by the Policy.

Also, where there is no injury in fact, potential enforcement of the Policy does not qualify as causation sufficient to confer standing. Even if there were causation, it is not certain an injunction would redress any injury, given Iowa's several statutes prohibiting similar conduct as the Policy prohibits. *See, e.g.*, IOWA CODE § 280.28 (2022). Thus, based on the record before the Court at this early stage of litigation, plaintiff will have a difficult time establishing that Parents A-G have standing, and if the parents lack standing, so too does plaintiff.

Standing aside, the Court finds plaintiff has not shown a likelihood of success on the merits for other reasons. Though parents have a fundamental right to direct the care, custody, and control of their children, they have not shown sufficiently any certain, impending action taken under the Policy that will interfere with that right. None of them allege their children have been given a plan, none of them allege they have been left out of any plan-creation, and none of them allege they have been denied access to information about their minor children. To be sure, that is not to say that the language of the Policy does not raise legitimate concerns about whether defendants could or would fail to disclose to or conceal information from parents about their children's gender identity. Nevertheless, based on the record currently before the Court, plaintiff will have difficulty showing that the Policy violates their constitutional rights.

Likewise, plaintiff has not shown a fair chance of prevailing on its First Amendment claims. First, no speech is compelled by the Policy. The Policy does not require students to speak to other students. If they do speak to other students, they do not have to refer to other students by names or pronouns. It is also possible to use the universal word "they," which is often used to refer to a person or people regardless of whether that person uses "they" as a pronoun. Again, to be clear, the Policy arguably

9

places students in potentially untenable positions should they desire to fully express themselves and their beliefs, but schools may legitimately restrict First Amendment rights in certain limited circumstances. *Tinker v. Des Moines Independent School District*, 393 U.S. 503, 514 (1969). Thus, plaintiff has not shown a fair probability of prevailing on this ground.

Further, the Policy appears content and viewpoint neutral. The Policy applies to misuse of any student's name or pronouns, including those who identify as cisgender. Plaintiff has not shown facts indicating expression of views of any kind will be disciplined or that their expression will be limited under the Policy. The Policy itself has not been shown to penalize students for expressing views that there are two genders or that gender dysphoria does not exist, nor that it penalizes opposite expression. It only has been shown to penalize students for conduct directed at a specific individual in relation to their name and pronouns. Again, even if the Policy restricts free speech rights of students to some degree, schools have more leeway to do so in a school setting. Thus, plaintiff has not shown a fair probability that the Policy is not content and viewpoint neutral.

Plaintiff has not shown evidence that the Policy is overbroad. The Policy provision "Names and Pronouns" provides "intentional and/or persistent refusal . . . to respect a student's gender identity" is a violation. (*See* Doc 1-1, at 4). Plaintiff has not shown the Policy is intended to discipline accidental misuse, jokes, or opinions related to gender identity in general. On its face, the Policy provides that a student will be punished for intentional and repeated misuse of a name or pronoun and behavior targeting specific people, including, presumably, jokes or making fun of someone on the basis of their gender or name. Plaintiff has not shown at this stage that "refusal . . . to respect" means anything other than refusal to honor a specific person's gender identity. Thus, plaintiff has not shown a fair probability of success in proving the Policy is facially overbroad.

10

Case 1:22-cv-00078-CJW-MAR   Document 28   Filed 09/12/22   Page 10 of 11

Finally, plaintiff has not shown a fair probability that the Policy is vague. Though the word "respect" could mean a variety of things, the context it is used in and its position in the sentence indicates "respect" means "will acknowledge or honor through use of." Given its position under a section about names and pronouns, it appears "respect" means students and staff members must use a student's preferred name and pronouns. Plaintiff has not shown a fair probability that students or staff are not on notice of what behavior violates the Policy given a plain reading of the Policy provision. Plaintiff has not met their burden.

Thus, the Court finds the likelihood of success on the merits weighs against an injunction.

### IV. CONCLUSION

For these reasons, plaintiff's Motion for a Preliminary Injunction (Doc. 3) is **denied**.

**IT IS SO ORDERED** this 12th day of September, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa