**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| PARENTS DEFENDING EDUCATION, | No. 22-CV-78 CJW-MAR |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| LINN-MAR COMMUNITY SCHOOL DISTRICT, et al., | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I.     BACKGROUND ............................................................................... 3

II.    PRELIMINARY INJUNCTION STANDARD ........................................ 9

III.   ANALYSIS ..................................................................................... 9

     A.    Irreparable Harm ................................................................. 10

          1.    Arguments .................................................................. 10

          2.    Applicable Law ............................................................ 10

          3.    Analysis ..................................................................... 11

     B.    Balance of Harms ............................................................... 12

          1.    Arguments .................................................................. 12

          2.    Applicable Law ............................................................ 13

          3.    Analysis ..................................................................... 14

Case 1:22-cv-00078-CJW-MAR   Document 38   Filed 09/20/22   Page 1 of 28

C.  Likelihood of Success on the Merits ...............................................15

    1.  Arguments .......................................................................15

    2.  Applicable Law ...............................................................16

    3.  Analysis ..........................................................................18

        a.  Standing .......................................................................18

            i.  Injury in Fact ...............................................18

            ii.  Causation ...................................................20

            iii.  Redressability ...........................................20

        b.  Child Rearing ..............................................................21

        c.  First Amendment .......................................................22

            i.  Compelled Speech .....................................22

            ii.  Content and Viewpoint Based.................23

            iii.  Overbroad ................................................24

            iv.  Vagueness ................................................25

D.  Public Interest ...................................................................26

    1.  Arguments .......................................................................26

    2.  Applicable Law ...............................................................27

    3.  Analysis ..........................................................................27

IV.  CONCLUSION ......................................................................28

2

This matter is before the Court on plaintiff's Motion for Preliminary Injunction. (Doc. 3). Defendants timely resisted (Doc. 17), and plaintiffs timely replied. (Doc. 21). On September 6, 2022, Professors of Psychology and Human Development filed an amicus brief (Doc. 23) in favor of denying the injunction, and amici One Iowa and Iowa Safe Schools filed an additional amicus brief (Doc. 25) in favor of defendants. The Court held oral argument on September 6, 2022. (Doc. 26).

On September 12, 2022, the Court **denied** plaintiff's motion. (Doc. 28). The Court writes now to provide more detailed reasoning of its decision.

## I.    BACKGROUND

The Court's factual findings are based on plaintiff's complaint and the parties' sworn declarations and exhibits submitted in support of their positions. The Court's factual findings here are provisional and not binding in future proceedings. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits[.]") (citations omitted); *SEC v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001) (same). Affidavits submitted at the preliminary injunction phase need not meet the requirements of affidavits under Rule 56(c)(4), but courts may consider the "competence, personal knowledge and credibility of the affiant" in determining the weight to give the evidence. *Bracco v. Lackner*, 462 F. Supp. 436, 442 n.3 (N.D. Cal. 1978) (citing 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2949)). The Court will discuss additional facts as they become relevant to its analysis.

On April 25, 2022, defendants Linn-Mar Community School District, Shannon Bisgard, Brittania Morey, Clark Weaver, Barry Buchholz, Sondra Nelson, Matt Rollinger, Melissa Walker, and Rachel Wall (collectively, the "School District") enacted an administrative regulation, Board Policy 504.13-R ("the Policy"). (Doc. 17, at 2).

Case 1:22-cv-00078-CJW-MAR    Document 38    Filed 09/20/22    Page 3 of 28

The Policy was enacted to "implement and clarify the School District's obligations under Board Policy no. 504.13," which was adopted the same day. (Docs. 3, at 1; 17, at 2-3).

The Policy covers several topics and areas of school behavior related to treatment of transgender and gender-nonconforming students. (Doc. 1-1). Several provisions of the Policy are relevant here, including those entitled Establishment of Gender Supports, Records, Confidentiality, and Name and Pronouns. (*See generally* Docs. 1; 3; 17). The first of these provides for plans related to students' gender identities ("Gender Support Plans"):

**Establishment of Gender Supports**

Communication with the student and/or parent/guardian is key. Schools should make a case-by-case determination about appropriate arrangements for transgender students regarding names/pronouns, restroom and locker facilities, overnight accommodations on school trips, and participation in activities. These arrangements should be based on the student's or family's wishes, be minimally burdensome, and be appropriate under the circumstances.

Any student in seventh grade or older will have priority of their support plan over their parent/guardian. All supports can be documented in a Gender Support Plan.

Any student, regardless of how they identify, may request to meet with a school administrator and/or school counselor to receive support from the school and implement a Gender Support Plan. When a student and/or parent/guardian contacts school staff about support at school, the school will hold a meeting with the student within 10 school days of being notified about the request for support. The student should agree with who is a part of the meeting, including whether their parent/guardian will participate.

The Gender Support Plan will be maintained in the student's temporary records, not the student's permanent records. The Linn-Mar Community School District is committed to supporting all transgender students, gender nonconforming students, and students who are questioning their gender. A Gender Support Plan is not required for a student to receive supports at school. In instances where there is not a Gender Support Plan, school administrators and/or school counselors shall work with the student to identify and coordinate support. Support available through a Gender

4

Support Plan, or otherwise, can include steps appropriate to also support siblings and family members of transgender students, gender nonconforming students, and students who are questioning their gender. Supports being provided for transgender, gender nonconforming students, and students who are questioning their gender will be reviewed on an annual basis or sooner, as necessary.

(Doc. 1-1, at 2-3). The Policy provides for record-keeping as it relates to students' preferred or adopted names and pronouns:

**Records**

The district and/or building shall maintain a mandatory, permanent student record that includes a student's legal name and legal gender. However, to the extent that the district and/or building is not legally required to use a student's legal name and gender on other school records or documents, the district and/or building shall use the name and gender preferred by the student. The district and/or building will change a student's official record to reflect a change in legal name or gender upon receipt of documentation that such change has been made pursuant to a court order or through amendment of state or federally-issued identification (School IDs, for example, are not legal documents and should use the student's preferred name). In situations where school staff or administration are required by law to use or report a transgender student's legal name or gender, such as for purposes of standardized testing, building secretaries will keep a record of the student's legal names and this document will be kept in a locked file for their access only. When a student transitions from one school to another, the recording form will be shared from building secretary-to-building secretary. A student's Gender Support Plan will be shared either administrator-to-administrator or school counselor-to-school counselor; depending on the student's preference.

All written records related to student meetings concerning their gender identity and/or gender transition with any staff member will be kept in a temporary file that shall be maintained by the school counselor. The file will only be accessible to staff members that the student has authorized in advance to do so.

(*Id.*, at 5-8).

5

The provision related to confidentiality states:

**Confidentiality**

All persons, including students, have a right to privacy which includes the right to keep one's transgender status private at school. Information about a student's transgender status, legal name, or gender assigned at birth may also constitute personally identifiable information contained in a student's education records under the Family Educational Rights and Privacy Act. Disclosing this information other than as allowed by law is not permitted. Conversations between students and school counselors are protected, confidential conversations under applicable counselor/student laws. The district shall ensure that all information relating to student gender identity contained in student education records will be kept confidential in accordance with applicable state, local, and federal privacy laws. The district shall not disclose information that may reveal a student's transgender status to others including but not limited to other students, parents, and school staff unless legally required to do so (such as national standardized testing, drivers permits, transcripts, etc.), or unless the student has authorized such disclosure.

Transgender and gender nonconforming students have the right to discuss and express their gender identity and expression openly and to decide when, with whom, and how much to share private information. The fact that a student chooses to disclose their transgender status to school staff or other students does not authorize them to share other medical information about the student. School staff should always check with the student first before contacting their parent/guardian. School staff should ask the student what name and pronouns they would like school officials to use in communications with their family. All students under 18 years of age, or those over 18 years of age who are claimed as dependents by their parents/guardians for tax purposes, should be aware that a parent/guardian has the right to review their student's education records under FERPA.

(*Id.*, at 3-4). The "Name and Pronoun" provision provides:

**Names and Pronouns**

Every student has the right to be addressed by a name and pronoun that corresponds to their gender identity. A court-ordered name or gender change is not required, and the student need not change official school records.

6

At the beginning of each semester, teachers may ask all students how they want to be addressed in class and in communications with their parent/guardian. Within 10 school days of receiving a request from a student, regardless of age, or a parent/guardian (with the student's consent), the district shall change a student's name and/or gender marker in student technology logins, email systems, student identification cards, non-legal documents such as diplomas and awards, yearbooks, and at events such as graduation. A student may make this request via their Gender Support Plan, if the student has requested one.

In situations wherein the district is required by law to use or to report a student's legal name and/or gender marker, such as for purposes of standardized testing, the building secretaries will keep a record of the student's legal names and this document will be kept in a locked file for their access only. When a student transitions from one school to another, the recording form will be shared from building secretary-to-building secretary. A student's Gender Support Plan will be shared either administrator-to-administrator or school counselor-to-school counselor; depending on the student's preference.

An intentional and/or persistent refusal by staff or students to respect a student's gender identity is a violation of school board policies 103.1 Anti-Bullying and Anti-Harassment, 104.1 Equal Educational Opportunity, and 104.3 Prohibition of Discrimination and/or Harassment based on Sex Per Title IX.

(*Id.*, at 4; 17, at 21).

On August 2, 2022, plaintiff, a parents organization, filed a complaint on behalf of seven anonymous parents who are purportedly members of the plaintiff organization. (Doc. 1). The complaint alleged the following violations: Count I—Violation of the Fourteenth Amendment (Parental Exclusion), Count II—Violation of the First Amendment (Compelled Speech), Count III—Violation of the First Amendment (Content and Viewpoint-Based Discrimination), Count IV—Violation of the First Amendment (Overbreadth), and Count V—Violation of the First and Fourteenth Amendments (Void for Vagueness). (*Id.*, at 20-28).

On August 5, 2022, plaintiff filed a Motion for Preliminary Injunction. (Doc. 3). Plaintiff requested an injunction barring enforcement of not only the provisions it challenges in the complaint but of the entire Policy. (*Id.*).

Plaintiff asserts arguments on behalf of seven parents identified only as "Parents A-G" who are opposed to enforcement of the Policy for several reasons. Parents A and B's children have neurodevelopmental disorders, such as autism spectrum disorder, that create confusion when distinguishing between sexes and gender. (Docs. 3-2, at 1-2; 3-3, at 1-2). Parents A and B allege harm because their children could potentially misstate their sex, gender, or pronouns, indicating to the average listener that they are a gender different from that assigned at birth and identify as nonbinary or transgender. (Docs. 3-2, at 2-4; 3-3, at 2-3). They fear, in that scenario, that staff would create a Gender Support Plan without parental consent. (Docs. 3-2, at 2-3; 3-3, at 2-4). Parent C has similar fears that her daughter will be given a Gender Support Plan without her knowledge because of conversations with her daughter, her daughter's friend-group, and her daughter's life experiences. (Doc. 3-4, at 2-3). Parents A-C also assert harm to their fundamental right to make decisions about the care, custody, and control of their children. (Docs. 3-2, at 3; 3-3, at 2-3; 3-4, at 3).

Parents D-G state that they and their children believe in only two genders, do not believe in gender dysphoria, and do not believe people assigned one sex at birth can genuinely identify later as another gender. (Docs 3-5, at 2; 3-6, at 2; 3-7, at 2; 3-8, at 2). Parents D-G allege harm through the chilling of speech because their children will be punished under the Policy if they do not "respect" another child's name or pronouns on a repeat, intentional basis, and they feel uncomfortable voicing their opinions on gender identity at school. (Docs 3-5, at 2; 3-6, at 2; 3-7, at 2; 3-8, at 2-3).

## II. PRELIMINARY INJUNCTION STANDARD

Plaintiff seeks a preliminary injunction to prevent the enforcement of the Linn-Mar Community School District's Board Policy 504.13-R during the pendency of litigation. (Doc. 3). To prevail on a motion for a preliminary injunction, a party must establish: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other party litigants; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008). The movant bears the burden of establishing the propriety of a preliminary injunction. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original) (quoting 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)). "[T]he burden on the movant is heavy, in particular where . . . 'granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.'" *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (second alteration in original) (quoting *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

## III. ANALYSIS

Because the absence of irreparable harm is fatal to a motion for preliminary injunction, the Court will first address the threat of irreparable harm. The Court will then discuss the remaining *Dataphase* factors. *See Dataphase*, 640 F.2d at 113, n.9.

9

## A. Irreparable Harm

The Court finds that plaintiff will not suffer irreparable harm absent a preliminary injunction.

### 1. Arguments

Plaintiff argues that it has suffered irreparable harm for two reasons. First, it argues that without an injunction, its members will be denied their constitutional rights to child-rearing—i.e., the fundamental right to make decisions concerning the care, custody, and control of their children. (Doc. 3-1, at 24–25). Second, plaintiff argues its members' children will be irreparably harmed by the denial of their First Amendment rights to free speech if an injunction is not granted. (*Id.*, at 25).

Defendants, however, argue plaintiff's members and their children face no threat of irreparable harm. Defendants assert plaintiff has not shown a risk of "immediate irreparable injury" because plaintiff (1) has not identified any injury that has occurred to date to members or their children and (2) has not identified any imminent risk of irreparable harm to its members of their children. (Doc. 17, at 29).

### 2. Applicable Law

"[T]o warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm." *Wachovia Secs., L.L.C. v. Stanton*, 571 F. Supp. 2d 1014, 1044 (N.D. Iowa 2008) (citation omitted). The movant must show more than the mere possibility that irreparable harm will occur. *TrueNorth Co., L.C. v. TruNorth Warranty Plans of N. Am., LLC*, 353 F. Supp. 3d 788, 801 (N.D. Iowa 2018). Rather, the movant must show it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Counc., Inc.*, 555 U.S. 7, 20 (2008). Thus, "[s]peculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012); *see also Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ("[T]o demonstrate

10

irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996))). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction[.]" *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Dataphase*, 640 F.2d at 113, n.9 ("[T]he absence of a finding of irreparable injury is alone sufficient ground for vacating the preliminary injunction.").

### 3. Analysis

Here, plaintiff has not shown irreparable harm will occur absent a preliminary injunction. Plaintiff has only provided evidence that harm is possible. Plaintiff has not, however, shown that there has been or will be impending, certain harm under the Policy.

There have been no showings of discipline under the Policy, that Gender Support Plans were given to children of Parents A-C, or that any parents have been denied information. Though the parents allege their children will likely be disciplined, will likely be given Gender Support Plans, and they will likely be denied any information or involvement if their children are given those plans, they have not shown that this future harm will occur with such imminence or such greatness that they will face or have faced irreparable harm. *See Turkish Coalition of Am., Inc. v. Bruininks*, 678 F.3d 617, 622 (8th Cir. 2012) (discussing, for purposes of certain imminence under standing doctrine, discipline under a school policy that is conceivable but is without sufficient factual recitation that such disciplinary practices exist). Currently, all plaintiff and its members face is speculative, notional harm that may never occur. Plaintiff must show "more than a mere possibility that irreparable harm will occur[,]" but plaintiff, at this stage, has failed to do so. *TrueNorth*, 353 F. Supp. 3d at 801.

Further, there has not been a showing with sufficient specificity of chilled speech or the avoidance of a certain course of conduct caused by the Policy's limitations.

Plaintiff has not shown that it is certain or imminent that Parents A-G's children will violate the Policy and receive discipline nor has plaintiff sufficiently recited what their children wish to say that will conflict with the Policy. The Court cannot infer that the students are avoiding a certain course of conduct because the Court cannot be sure what that course of conduct is. Further, there has been no recitation that if discipline occurs, it will be irreparable harm requiring an injunction. Indeed, to the extent that defendants disciplined children for violation of the Policy, that discipline would be subject to review and could be reversed, and thus, not irreparable. In short, the parents only assert that they fear their rights will be harmed if some uncertain future events occur. They have not shown any of these harms to be certain or imminent.

Thus, the Court finds irreparable harm does not weigh in favor of an injunction. Again, though this finding is sufficient to defeat this motion for preliminary injunction, the Court will still analyze the rest of the merits.

### B.    *Balance of Harms*

The Court finds the balance of harms weighs against granting a preliminary injunction.

#### 1. *Arguments*

Plaintiff argues a preliminary injunction is required because of the threat to plaintiff's members' constitutional rights absent an injunction. (Doc. 3-1, at 25). Plaintiff also asserts this factor and the public interest merge when the defendant is a government actor, but the Court will assess them separately under *Dataphase*, as that is the standard for a preliminary injunction.[1] (*Id.*).

_____

[1] Plaintiff states in its brief, "[t]he balance of the equities and the public interest factors 'merge when the Government is the party opposing the preliminary injunction.' *Nken v. Holder*, 556 U.S. 418, 435 (2009)." The Supreme Court did not say this. In the *Nken* decision, the Court discusses the functional overlap between the stay factors used in immigration cases and the factors applied to preliminary injunctions. *Nken v. Holder*, 556 U.S. 418, 428, 434 (2009)

Defendants assert the Policy is enforced to create a safe and supportive environment for all students, and an injunction would deprive all students of the security of knowing the school will recognize their autonomy and privacy to the extent various laws allow and require. (Doc. 17, at 30). Defendants also state harm to plaintiff is only hypothetical, so the balance of harms weighs in favor of defendants. (*Id.*).

### 2. *Applicable Law*

"[T]he balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." *Wachovia Secs., L.L.C.*, 571 F. Supp.2d at 1047. It is not the same analysis as the irreparable harm analysis. *Id.* The balance of harms analysis considers several factors including the threat of each parties' rights that would result from granting or denying the injunction, the potential economic harm to the parties, and whether the defendant has taken voluntary remedial action. *Id.* "[A]n illusory harm to the movant will not outweigh any actual harm to the non-movant." *Frank N. Magid Assocs., Inc. v. Marrs*, No. 16-CV-198-LRR, 2017 WL 3091457, at *5 (N.D. Iowa Jan. 9, 2017) (quoting *Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 976–77 (N.D. Iowa 2006)).

---

("There is substantial overlap between these and the factors governing preliminary injunctions; not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.") (internal citations omitted). The Court later discusses the stay factors of harm to the opposing party and the public interest, stating those factors "merge when the Government is the opposing party[,]" *Id.*, at 435, as opposed to the "balance of equities" and "public interest" factors. The language plaintiff quotes came from a district court opinion and is not binding on this Court. *See Dorce v. Wolf*, 506 F. Supp. 3d 142, 145 n.4 (D. Mass. 2020). After researching the provenance of the purported Supreme Court quote from plaintiff's brief, the misquotation does not appear to be intentional or meant to misguide the Court. It is an example, however, of sloppy, poor writing for which there is little excuse.

13

### 3. *Analysis*

The Court finds the balance of harms disfavors injunction.  The balance of harms only considers those harms that would result were the Court to issue an injunction.  If an injunction were granted here, it would not only prevent enforcement of the provisions at issue; it would prevent enforcement of the entire Policy because plaintiff has challenged the entire administrative Policy.[2]  (Doc. 3, at 1).  An injunction would block students from any protection from harassment and bullying on the basis of gender identity and would prevent the school from disciplining such harassment and bullying under various Title IX and Iowa civil rights-related provisions that defendants are obligated by law to enforce.  If a child were being bullied or harassed under any provision of the entire Policy, the school would not be allowed to step in and stop the bullying and would leave a vulnerable child with no remedy within the district.  This child could include a child belonging to Parents B-G.[3]

Further, by prohibiting the school from enforcing a policy in furtherance of various Iowa laws, including Section 216.9, an injunction would put defendants between a rock and a hard place.  Defendants would be compelled to not interfere with bullying and harassment as relates to the Code provisions it is legally bound to enforce if those provisions are furthered through the Policy.  Defendants could face penalties for not effectuating the laws.  So, not only would the district's children be harmed by unstoppable bullying, but the district could face risks and penalties, such as reduced funding that

---

[2] It appeared at the hearing, however, that plaintiff was attempting to narrow its ask to an injunction only to the challenged provisions.  The Court will not assume that to be the case, however, since that was not clear and the party's filings ask for injunction to the entire Policy.

[3] As the Court stated in its prior order, it does not mention Parent A in its analysis here, given their child is no longer enrolled in the district and will not be subjected to the Policy's provisions.

impacts the overall quality and span of the education the district can provide students. This is just one of many possible penalties the legislature may prescribe.

In contrast, no harm would immediately befall plaintiff if an injunction were not issued. Plaintiff has not shown any harms currently befall the parents or children for which it speaks as the Policy remains in force. However, even if the Court assumes harm to the plaintiff will occur, that harm would be insufficient to warrant an injunction. If the Court assumes Parents B-G will be deprived of information as to their children, that their children will be given or discuss a Gender Support Plan, or that their children will be punished for violating the provisions at issue, the Court finds that harm is not so great as to outweigh the harm to defendants and students within the district. Further, any such harm alleged to befall plaintiff as a result of the Policy, which would continue absent injunction, is not certainly impending and thus cannot be said to threaten plaintiff's rights so substantially as to favor injunction. Six parents assert their children face potential harm without an injunction. All families and their children in the district face potential harm with an injunction, given the Policy reaches to protect all students for various reasons and not only for name and pronoun misuse.

Thus, the balance of harms weighs against granting a preliminary injunction.

## C.    *Likelihood of Success on the Merits*

The Court finds the likelihood of success on the merits weighs against an injunction.

### 1. *Arguments*

Plaintiff asserts various arguments as to why it will succeed on the merits. First, plaintiff argues it has standing to bring this suit on behalf of its member-parents who have standing to sue. (Doc. 21, at 6-7). Next, plaintiff asserts a violation of the Fourteenth Amendment right of child rearing because parents will be deprived of information related to their children's gender identities and will have no input or control over their children's

15

decisions related to gender identity under the Policy.  (Doc 3-1, at 17-18).  Plaintiff also alleges it is likely to succeed on the merits because the Policy violates the First Amendment through its speech restrictions and compulsion of speech.  (*Id.*, at 20).  Plaintiff asserts the Policy also regulates speech in the following ways: first, it is a content and viewpoint-based regulation; second, is overbroad; and finally, it is void for vagueness under the First and Fourteenth Amendments.  (*Id.*, at 20).

Defendants assert plaintiff cannot be successful on the merits because it lacks standing.  (Doc. 17, at 5-13).  Defendants also argue plaintiff is unlikely to succeed on the merits on the basis of its fundamental rights claim because there is no deprivation of any liberty interest through the Policy.  (*Id.*, at 13-14).  Next, defendants assert plaintiff cannot prevail on the merits of any of its First Amendment claims.  (*Id.*, at 20).  Defendants argue plaintiff cannot prevail because the Policy does not compel speech, and it is not content or viewpoint-based because it does not regulate based on the content of the speaker's message or its ideology or views.  (*Id.*, at 23).  Also, defendants argue the Policy is not overbroad because it does not overstep its scope of regulation, nor is it void for vagueness because students are on notice of what the Policy prohibits and that it will not be applied arbitrarily.  (*Id.*, at 24, 26).

### 2. Applicable Law

The Eighth Circuit has rejected the notion that the phrase "probability of success on the merits" should be read to mean that a movant can "prove a greater than fifty [percent] likelihood that he will prevail on the merits."  *Dataphase Sys., Inc.*, 640 F.2d at 113.  More recently, the Eighth Circuit has explained that in cases not seeking to enjoin "government action based on presumptively reasoned democratic processes," courts should "apply the familiar 'fair chance of prevailing' test" to assess whether a movant has a likelihood of success on the merits.  *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008).  The "fair chance of prevailing" test

"asks only whether a movant has demonstrated a 'fair chance of prevailing' in the ultimate litigation and . . . does not require a strict probabilistic determination of the chances of a movant's success when other factors, for example irreparable harm, carry substantial weight." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1053–54 (8th Cir. 2014) (citations omitted).

A plaintiff must have standing to show a likelihood of success on the merits. Standing requires 1) an injury in fact that is concrete and particularized, actual or imminent; 2) that the injury in fact was likely caused by the defendant; and 3) that the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The burden to show all three elements of standing lies with the plaintiff. *Id.*, at 2208.

When a plaintiff alleges injury prior to enforcement, plaintiff must show either (1) an intention to engage in particular conduct impacted by the policy and that plaintiff individually faces a credible threat of enforcement if he acts or (2) that he self-censors as the result of an objectively reasonable chilling effect. *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-99 (1979). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Larid v. Tatum*, 408 U.S. 1, 13-14 (1972). Further, causation requires the injury plaintiff has experienced to be fairly traceable to the alleged conduct. *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587, 2606 (2022). Finally, redress asks whether a favorable ruling would redress—remedy or compensate—the relevant injury caused by defendant. *Id.*

Additionally, when a plaintiff asserts third party standing to assert the rights of another, courts require that the plaintiff make two additional showings: (1) that the party asserting the right has a "close" relationship with the person who possesses the right;

(2) whether there is a "hindrance" to the possessor's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

### 3. Analysis

Here, the Court finds plaintiff is unlikely to succeed on the merits. The Court first notes the parties do not dispute plaintiff's ability to bring this suit on behalf of its parent-members and their minor children. The Court will first address plaintiff's standing before moving into its fundamental rights and First Amendment discussions.

### a. Standing

First, plaintiff faces some substantial obstacles of succeeding on the merits because plaintiff appears, on the facts alleged at this stage, to lack standing. Plaintiff has not provided facts to sufficiently allege an injury in fact, that Policy enforcement caused the injury, or that an injunction would redress the alleged injury.

### i. Injury in Fact

First, there has not been a sufficient factual recitation for the Court to conclude, at this stage, that Parents A-G or their children have suffered an injury in fact. An injury in fact cannot simply be a possible future injury but instead must be certainly impending. *Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 409 (2013).

In the absence of enforcement on a facial challenge, courts evaluate whether injury was caused through a chilling effect or through a credible threat of enforcement. Plaintiff, however, has only stated boilerplate, notional, subjective fears of chilled speech. None of the parents assert their child has been disciplined under the Policy. Plaintiff has not alleged any child has been disciplined for the misuse or failure to respect another child's preferred name or pronouns. The parents claim injury because their children may decide to express certain views or address another child using pronouns or names which that child does not identify and that if their children do so, they may receive discipline under the Policy. In other words, their children have "chilled" their own

18

speech based on their perception that they will be disciplined for speaking under the Policy. None of these parents, however, allege their child's speech has resulted in discipline under the Policy, that they have been threatened with discipline directly if they do express their views on gender identity, or that the Policy's requirement of respecting another's gender identity relates to anything other than students' names or pronouns. (Doc 1-1, at 4); *see Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 622 (8th Cir. 2012) (stating injury cannot be found when there is a lack of factual allegations that certain retaliatory or disciplinary actions may result under the school policy). They also do not with sufficient specificity allege what their children might say that will cause an injury through discipline under the Policy; instead they assert that the mere existence of the Policy is chilling speech. *See Turkish Coal.*, 678 F.3d at 621-22; *Morrison v. Bd. of Educ. Of Boyd County*, 521 F.3d 602, 608-10 (6th Cir. 2008). Fear of hypothetical future harm to plaintiff's members and their children is not enough to sufficiently allege an injury in fact on these facts. *Clapper*, 568 U.S. at 416.

Additionally, plaintiff asserts a conjectural possibility of injury via a Gender Support Plan being created for the children without parental knowledge or consent. They predict the school and/or their children will not involve the parents in the creation of or discussions about a Gender Support Plan and that the school will not be forthcoming about Gender Support Plans when parents ask in violation of their fundamental rights of child-rearing. Based on the record currently before the Court, no one has been denied information related to their child's gender identity or Gender Support Plan. Though the Court does not doubt their genuine fears, the facts currently alleged before the Court do not sufficiently show the parents or their children have been injured or that they face certainly impending injury through enforcement of the Policy. The theory that (1) their child will express a desire for or indicate by mistake a desire for a plan, (2) the child will be given a plan, (3) without parental consent or knowledge, (4) and the information will

be hidden or denied when parents ask requires too many speculative assumptions without sufficient factual allegations to support a finding of injury. *See Turkish Coal.*, 678 F.3d at 622.

Parent A, additionally, has freely withdrawn their child from the school district. The Policy no longer applies to their child, and the harm of being "forced" out of the school district is self-inflicted. *See Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). Even assuming the Policy "forced" the child to leave the district, the Policy itself still has no effect on the child and cannot cause a cognizable injury in fact.

### ii. Causation

There have not been sufficient factual allegations to find causation. Because the Court finds there is no injury in fact, potential enforcement of the Policy does not qualify as causation sufficient to confer standing. The Policy cannot cause an injury when there is no injury to cause. Here, the facts plaintiff alleges at this stage are not sufficient to show any injury was caused by the Policy. Thus, plaintiff has not shown a fair probability that there is causation.

### iii. Redressability

Even if there were causation, plaintiff has not sufficiently shown an injunction would redress any injury. Iowa has several statutes prohibiting similar conduct as the Policy prohibits. *See, e.g.*, Iowa Code § 280.28 (2022); Iowa Code § 216.9 (2022). Even if the Policy did not exist or an injunction were granted, the law still expressly prohibits discrimination in Iowa public schools based on gender identity. *See* § 216.9. Thus, plaintiff has failed to establish a fair probability an injunction would redress its alleged injury.

For these reasons, based on the record before the Court at this early stage of litigation, plaintiff will have a difficult time establishing that Parents A-G have standing. If the parents lack standing, so too does plaintiff.

### b. *Child Rearing*

The Court finds plaintiff has not shown a likelihood of success on the merits based on an alleged violation of the fundamental right of child rearing. Plaintiff is certainly correct no one can decide without proper process that a parent is unfit or should not be allowed to make decisions directed toward the care, custody, and control of their children. *See Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972). Plaintiff has not shown sufficiently, however, that there is any certain, impending action taken under the Policy that will interfere with that right. Plaintiff does not allege on behalf of any of the parents that their children have been given a plan or allege with sufficient specificity that they will be given a plan. Nor does plaintiff allege these parents have been left out of any plan creation or sufficiently allege that they will with certainty soon be left out.

Finally, plaintiff and parents do not allege they have been denied access to information about their minor children nor have they shown any certain impending denial of access. To be sure, that is not to say that the language of the Policy does not raise legitimate concerns about whether defendants could, or would fail to disclose to, or conceal information from, parents about their children's gender identity. The Policy itself is not explicit as to what standards schools will apply in supplying to parents information about their minor child's gender identity. Nevertheless, based on the record currently before the Court, plaintiff will have difficulty showing that the Policy violates their constitutional rights.

Thus, the Court finds plaintiff has not shown a fair probability of success on the merits as to its child rearing claim.

### c. First Amendment

Likewise, plaintiff has not shown a fair chance of prevailing on its First Amendment claims. Plaintiff has not sufficiently alleged a fair probability of success on the merits as to compelled speech, content and viewpoint-based speech regulation, that the Policy is overbroad, nor that the Policy is vague.

Schools have more leeway in what protected speech and expression they may legally restrict. For example, they may regulate speech in school that causes substantial disruption or material interference with school activities, regulate indecent and vulgar speech or that promoting illegal drug use, or exercise editorial control over expression in school-sponsored activities if the editing reasonably relates to legitimate pedagogical concerns. *Morse v. Frederick*, 551 U.S. 393, 409 (2007); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). Recently, the Supreme Court has announced there are possible scenarios under which expression off-campus may be limited, though it has not explicitly identified those scenarios. *See Mahanoy Area Sch. Dist. V. B.L. by and through Levy*, 141 S.Ct. 2038, 2046-49 (2021).

### i. Compelled Speech

Plaintiff has not sufficiently shown any speech is compelled by the Policy. There is no allegation the Policy requires students to speak to other specific students or do so using their names or pronouns. If they do speak to other students, they do not have to refer to other students by names or pronouns. It is also possible to use the universal word "they," which is often used to refer to a person or people regardless of whether that person uses "they" as a pronoun. Adolescents often go about their school day not interacting with other students, both intentionally and unintentionally. It is not farfetched to think students will not interact, again, intentionally and unintentionally, with students

with whom they fundamentally disagree or whose lifestyles they do not agree with. There is no way to gauge whether these students will be placed in groups together for projects or assignments. But there have been no factual allegations that the Policy requires students to call each other by anything at all, including their names or pronouns, as opposed to "you" or "they," which people naturally do in reference to each other already. The only allegation that has been made is that, if a student does use names or pronouns, they must be preferred names or pronouns.

Again, to be clear, the Policy arguably places students in the position that they cannot fully express themselves and their beliefs, but schools may legitimately restrict First Amendment rights in certain limited circumstances. *Tinker*, 393 U.S. at 514.

Thus, plaintiff has not shown a fair probability of prevailing on this ground.

### ii. Content and Viewpoint Based

Plaintiff has not alleged sufficiently that the Policy is content or viewpoint based. "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Gilbert, Ariz.*, 576 U.S. 155, 164 (2015). Further, the classification of content-based or content-neutral laws requires courts to determine whether a speech regulation facially draws a distinction based on what message the speaker conveys. *Id.* In contrast, viewpoint discrimination regulates speech on the basis of the speaker's ideology, perspective, or opinion within the speech. *Rosenberger v. Rector and Visitors of Univ. Va.*, 55 U.S. 819, 829 (1995).

At this stage, the Policy appears content and viewpoint neutral. Though the Policy is geared toward protecting transgender and nonbinary students, the Names and Pronouns provision, from a plain reading, applies to misuse of any student's name or pronouns, including those who identify as cisgender. The provision appears to apply with equal force to someone named Nathaniel who prefers the nickname Nate as it does to a transgender individual who wishes to go by a name different from their legal or birth

23

name.  The Names and Pronouns provision provides that whatever name Nate provides to staff as part of his gender identity, it should be used, and any "intentional and/or persistent refusal by staff or students to respect a student's gender identity is a violation of school board policies[.]"  More concretely, if Nate is a cisgendered male, the Policy bars anyone from calling Nate "her."  Thus, the Policy appears, at this stage, to be content neutral.

Plaintiff has not shown facts indicating expression of views of any kind will be disciplined or that their expression will be limited under the Policy.  The Policy itself has not been shown to penalize students for expressing views that there are only two genders or that gender dysphoria does not exist, nor that it penalizes opposite expression.  It only has been shown to penalize students for conduct directed at a specific individual in relation to their name and pronouns, as part of their gender identity.  Thus, it appears, based on the facts currently before the Court, to be viewpoint neutral.

Again, even if the Policy restricts free speech rights of students to some degree, schools have more leeway to do so in a school setting.  Thus, plaintiff has not shown a fair probability that the Policy is not content and viewpoint neutral.

### iii.  Overbroad

Plaintiff next alleges the Policy is overbroad.  A policy or law is facially overbroad under the First Amendment when no application of the policy would be constitutional or where a substantial number of the policy's potential applications would be unconstitutional in relation to the policy's legitimate sweep.  *Ams. For Prosperity Found. V. Bonta*, 141 S. Ct. 2373, 2387 (2021).

Plaintiff has not shown evidence that the Policy is overbroad.  The Policy provision "Names and Pronouns" provides "intentional and/or persistent refusal . . . to respect a student's gender identity" is a violation.  (*See* Doc 1-1, at 4).  Plaintiff has not shown the Policy is intended to discipline accidental misuse, jokes, or opinions related to gender

identity in general. On its face, the Policy provides that a student will be punished for intentional and repeated misuse of a name or pronoun and behavior targeting specific people, including, presumably, jokes or making fun of someone on the basis of their gender or name. The district argues the purpose of the Policy is to protect students who are transgender or nonbinary from harassment and bullying, based on their names and pronouns, which often change when people's gender identity changes. There is nothing in the record currently to indicate the Policy is being applied beyond its legitimate sweep. The factual recitation does not indicate at this stage that "refusal . . . to respect" means anything other than refusal to honor a specific person's gender identity. Thus, plaintiff has not shown a fair probability of success in proving the Policy is facially overbroad.

### iv. Vagueness

Finally, plaintiff has not shown a fair probability that the Policy is vague. A policy or statute is void for vagueness when the offense the policy regulates or penalizes is not (1) "with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402-03 (2010); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Plaintiff has not shown a likelihood of success on the merits as to the vague for voidness challenge. Though the word "respect" could mean a variety of things, the context it is used in and its position in the sentence indicates "respect" means "will acknowledge or honor through use of." (Doc. 1-1, at 4). Given its position under a section about names and pronouns, it appears "respect" means students and staff members must use a student's preferred name and pronouns when speaking to or about them at school. Plaintiff has not shown evidence supporting the idea that the provision, on its face, applies to any other scenario. Plaintiff has not shown a fair probability that students

or staff are not on notice of what behavior violates the Policy given a plain reading of the Policy provision.

Further, there is no evidence before the Court at this stage that indicates a fair probability that the Policy provision encourages arbitrary or discriminatory enforcement. The Policy provides that a repeated, intentional misuse of a student's name or pronouns violates school policies. (Doc. 1-1, at 4). This indicates, facially, that the school will not discipline less-favored students for accidental misuse or one-time occurrences. This does not mean the Policy does not raise concerns about the threshold for enforcement of the provision, however. The Policy, on its face, applies to all students who choose intentionally and repeatedly to misuse students' names or pronouns, and no facts to the contrary are before the Court. There is nothing in the record to indicate the Policy as a whole or the Name and Pronoun provision leads to arbitrary or discriminatory enforcement or is facially unconstitutional under void for vagueness doctrine. Plaintiff has not met their burden.

Thus, the Court finds the likelihood of success on the merits weighs against an injunction.

### D.     Public Interest

The Court finds that the public interest tips in favor of denying the preliminary injunction.

#### 1. Arguments

Plaintiff asserts that the public interest weighs in favor of granting a preliminary injunction because it is tautologically in the public interest to prevent constitutional rights violations. (Doc. 3-1, at 25). Also, plaintiff argues that it cannot be a legitimate public interest to enforce what is, in its view, an unconstitutional ordinance. (Doc. 21, at 15).

Defendants argue the public interest weighs in favor of fighting discrimination. (Doc. 17, at 30-31). The public has a heavy, broad interest, defendants argue, in

eradicating harassment, bullying, and discrimination on the basis of gender identity. (*Id.*). Defendants assert this interest is far broader than the interests of parents who wish to access their children's school information, which the Policy allows. (*Id.*, at 31).

### 2. Applicable Law

This Court has noted as follows:

> The "public interest" factor frequently invites the court to indulge in broad observations about conduct that is generally recognizable as costly or injurious. However, there are more concrete considerations, such as reference to the purposes and interests any underlying legislation was intended to serve [and] a preference for enjoining inequitable conduct[.]

*Prudential Ins.*, 728 F. Supp. 2d at 1032 (internal citations omitted).

### 3. Analysis

The Court finds the public interest weighs against a preliminary injunction. It is in the public interest to ensure schools comply with state laws that prohibit discrimination based on gender identity. *See* Iowa Code § 216.9 (2022). Likewise, it is in the public interest that public schools are productive, safe places to educate children. Creating a safe environment for children necessarily includes ensuring no child is subject to harassment, bullying, or made to feel lesser for any reason by students, staff, or others while at school. It is, however, also in the public interest to prevent the chilling of protected speech and interference with the right of child-rearing. At this stage, however, those alleged harms to protected speech and child-rearing here are not imminent harms and cannot be said to tip the scales in favor of an injunction.

Thus, the public interest tips in favor of denying the injunction.

## IV.    CONCLUSION

For these reasons stated above, the Court finds against plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED** this 20th day of September, 2022.

C.J. Williams
United States District Judge
Northern District of Iowa